CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR, LLP
61 Broadway, Suite 3000
New York, New York 10006-2802
(212) 344-7042
Attorneys for Plaintiff
Our File: 9956/SHV

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| MUREX, LLC formerly MUREX N.A. LTD.<br><br>        Plaintiff,<br>  -v-<br><br>M/T SHAMROCK JUPITER, her engines, freights, tackle, appurtenances, etc., *in rem*<br><br>        Defendant. | 14 Civ. _____<br>**VERIFIED ORIGINAL COMPLAINT** |

   Plaintiff, Murex, LLC, by and through its attorneys, CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR, LLP, subject to any right of arbitration contained in the agreement between the parties and specifically reserving its right to stay this action pending arbitration pursuant to 9 U.S.C. §§ 8 and 202, respectfully files this its Verified Original Complaint complaining of Defendant, M/T SHAMROCK JUPITER, her engines, freights, tackle, appurtenances etc., *in rem* (hereinafter "SHAMROCK JUPITER" or "Vessel") and, upon information and belief, alleges as follows:

## JURISDICTION AND VENUE

   1.  This is a case of admiralty jurisdiction, 28 U.S.C. § 1333, as hereinafter more fully appears. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is brought pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2244550-1

2. Venue is proper in this Court because the Vessel is or was within this District.

## THE PARTIES

3. At all material times to this action, Murex N.A. Ltd. ("Murex-1") was a limited partnership organized under the laws of the State of Texas. In November of 2012, it converted to Murex, LLC ("Murex-2") a Texas limited liability company with an office and principle place of business located at 5057 Keller Springs Road, Suite 150, Addison, Texas 75001. It is the successor-in-interest to MUREX N.A., Ltd. ("MUREX")

4. At all material times, the M/T SHAMROCK JUPITER was and is a 2009 built, Panamanian flagged chemical/oil products tanker, IMO No. 9416082, 19,837 DWT. At all material times, the Vessel was and now is owned by Orchid Transporte. At all material times, the Vessel was entered into the Navig 8 Chemicals Pool. At all material times, the Vessel was under voyage charter to Delta Commodities GmbH ("Delta") pursuant to an ASBATAKVOY charter party dated July 13, 2012, a copy of which is attached hereto as **Exhibit A** and is fully incorporated by reference. The Vessel is presently or will be during the pendency of this suit within the Southern District of New York.

## FACTS

5. Murex-1 contracted with Delta Commodities for the purchase of a cargo of approximately 5000 cbm Anydrous Ethanol to be delivered between the period of August 15 to 31, 2012 from Vitoria, Brazil to Oil Tanking Texas City Terminal, Texas City, Texas.

6. Defendant Delta Commodities chartered the SHAMROCK JUPITER for carriage of the above-described cargo from Vitoria, Brazil to Texas City, Texas.

7. The cargo was loaded at the Port of Vitoria-ES-Brazil on or about August 15, 2012. A true and correct copy of the Bill of Lading is attached as **Exhibit B** and is fully incorporated by reference.

8. The Vessel failed to deliver the cargo in Texas City, Texas or within the August 15-31 2012, delivery window. Instead, the Vessel delivered the cargo on or about September 18, 2012, in Tampa, Florida.

9. After loading the subject cargo, the Vessel failed to proceed directly to Texas City, Texas to deliver the cargo and/or failed to only call maximum one (1) port between load and discharge. Instead, in violation of its obligations under the contract of carriage, the Vessel called at two (2) intermediate ports and called at a port north of Savannah (New York) before eventually delivering the cargo in Tampa, Florida, thereby delaying the delivery of the cargo.

10. Due to the Vessel's failure to proceed directly to Texas City, Texas to deliver the cargo and/or failure to only call maximum one (1) port between load and discharge and/or failure to adhere to the contractual prohibition of not calling at a port north of Savannah, Murex-1 did not receive the cargo during the contracted delivery window in August 2012. Consequently, Murex-1, which would have sold the cargo against the August Chicago Platts base price of $2.5897 per U.S. gallon at 60 degrees Fahrenheit, had to instead sell the cargo against the September Chicago Platts base price of $2.3729 per U.S. gallon at 60 degrees Fahrenheit, a difference in base price of $0.2168 per gallon.

11. Based on the total cargo of 1,315,939 U.S. gallons at 60 degrees Fahrenheit, Murex suffered a loss of $285,295.36 as a result of the Vessel's failure to deliver the cargo as promised. See attached **Exhibit C** which is fully incorporated by reference.

## RULE C ALLEGATIONS

12. Murex, as holder, of the Bill of Lading, was at all material times the owner of the subject cargo and of the covering Bill of Lading and is therefore the proper party in interest to bring this claim.

13. The Bill of Lading clearly references and incorporates the July 13, 2012 ASBATANKVOY tanker voyage charter party, making its terms the controlling agreement between the parties.

14. Part I of the charter party (with relevant rider clause amendments) provides in pertinent part:

>    B. Laydays:
>       Commencing: 05 August 2012    Cancelling: 15 August 2012
>
>    C. Loading Port(s): One safe berth Vitoria.
>
>    D. Discharging Port(s): One safe berth Texas City.
>
>    K. The place of General Average and arbitration proceedings to be London (per rider)
>
>    M. Special Provisions:
>
>    … "**Owner agrees to call Maximum one (1) port between load and discharge under this C/p within Caribs – US Gulf and US East Coast not north of Savannah**. …"

15. Further, Part II, Clause 1 of the charter party provides as follows:

Warranty-Voyage-Cargo. The vessel classed as specified in Part I hereof and to be so maintained during the currency of this charter, shall will all convenient dispatch, proceed as ordered to Loading Ports named in accordance with Clause 4 hereof, or so near thereunto as she may safely get (always afloat) and being seaworthy and having all pipes, pumps and heater coils in good working order and being in every respect fitted for the voyage so far as the foregoing conditions can be attained by the exercise of due diligence, perils of the sea and any other cause of whatsoever kind beyond the Owner's and/or Master's control excepted, shall load (always afloat) from the factors of the Charterer a full and complete cargo of petroleum and or its products in bulk, not exceeding what she can reasonably stow and carry over and above her bunker fuel, consummate stores, feed culinary and drinking water and complement and their effects (sufficient space to be left in the tanks for the expansion of cargo) **and being so loaded shall forthwith proceed as ordered on signing bill of lading, direct to the discharge ports or so near thereunto as she may safely go (always afloat) and deliver said cargo**. If heating of the cargo is requested by the Charterer the Owner shall exercise due diligence to maintain the temperature requested. (*See* Exhibit A) (emphasis added).

16. After loading the subject cargo, the Vessel failed to proceed directly to Texas City, Texas and/or failed to only call maximum one (1) port between load and discharge and/or failed to not call at a port north of Savannah.  Rather, in contravention of the terms of the charter party as incorporated into the Bill of Lading, the Vessel called at two (2) intermediate ports and called at a port north of Savannah (New York) before eventually delivering the cargo in Tampa, Florida, thereby delaying delivery of the cargo and resulting in claimed damages to Murex.

17. The Vessel's failure to proceed to the named port of discharge with maximum one intermediate port and failure to abide by its obligation not to call at a US East Coast port north of Savannah, Georgia constitutes a breach of the contract of carriage and resulted in the delay of the delivery of the cargo and the claimed damages.

18. By reason of Defendant's material breach of its obligations under the contract of carriage, Plaintiff as successor-in-interest to Murex has a maritime lien against the SHAMROCK JUPITER in the principal amount of  $285,295.36, together with interest and costs.

19. Plaintiff seeks an Order from this Court directing the Clerk of Court to issue a Warrant of Arrest for the M/T SHAMROCK JUPITER, commanding the United States Marshal for the District of New Jersey to seize the M/T SHAMROCK JUPITER, and further seeks that the Vessel hereafter be sold at judicial sale, the proceeds thereof to be deposited into the registry of the Court and, after due proceedings are had, to be disbursed to Murex in satisfaction of the debt owed to it.

20. This dispute is referable to arbitration under 9 U.S.C. §§ 8 and 202. Plaintiff respectfully requests that after the arrest of the SHAMROCK JUPITER that this Honorable Court direct the parties to proceed with the arbitration and retain jurisdiction to enter its decree upon the award.

21. All and singular of the premises are true and within the admiralty jurisdiction of the United States of America and of this Court.

22. All conditions precedent have been performed or have occurred.

WHEREFORE, Plaintiff prays:

a. That this Verified Complaint be deemed good and sufficient;

b. That process according to the rules and practices of this Court in causes of admiralty and maritime jurisdiction, particularly Supplemental Admiralty Rule C of the Federal Rules of Civil Procedure, may issue against the M/T SHAMROCK JUPITER, her engines, tackle boilers, equipment, appurtenances, etc. and that all persons claiming title or right to said Vessel be cited to appear and answer under oath the allegations of this Verified Original Complaint;

c. That as soon as is practical following the arrest of the M/T SHAMROCK JUPITER, a further hearing be held by this Court pursuant to Supplemental Rule E(4)(f) to hear any objections to the arrest;

d. That this Honorable Court stay the proceedings and direct the parties to proceed with arbitration pursuant to their agreement(s) and retain jurisdiction to enter its decree upon the arbitration award;

e. That a judgment be entered in favor of Plaintiff and against M/T SHAMROCK JUPITER in the principal amount of $285,295.36, together with interest and costs;

f. That the M/T SHAMROCK JUPITER, her engines, tackle boilers, equipment, appurtenances, etc. be condemned and sold, free and clear of all liens and encumbrances to satisfy the judgment against the M/T SHAMROCK JUPITER

    and that this Court award Plaintiff out of the proceeds of the sale the full amount

    of its damages, together with interest, costs of suit and attorney's fees; and

 g. That this Court grant to Plaintiff such other, further and different relief as may be just and proper.

Dated: New York, New York
    May 2, 2014

           Respectfully submitted,

           CICHANOWICZ, CALLAN, KEANE,
           VENGROW & TEXTOR, LLP
           Attorneys for Plaintiff


          By: /s/   Stephen H. Vengrow
           Stephen H. Vengrow
           61 Broadway, Suite 3000
           New York, NY 10006
           Tel: 212.344.7042
           Fax: 212.344.7285
           svengrow@cckvt.com

STATE OF TEXAS §
§
COUNTY OF HARRIS §

## VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared Phil Dalton, who being duly sworn, deposed and stated as follows:

"I have read the foregoing Verified Original Complaint, and know the contents thereof, and that the same are true and correct to the best of my knowledge, information and belief. I am the Director of New Product Development for Murex LLC, and am authorized to make this Verification."

*/s/ Phil Dalton*

Phil Dalton

SUBSCRIBED AND SWORN to before me on May 2, 2014.

[Notary Seal: CONNER R. SAFFORD, Notary Public, STATE OF TEXAS, My Comm. Exp. Aug. 13, 2014]

Notary Public, State of Texas

2248566-1

2244550-1                            8